UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL GARCIA,

                            *Plaintiff,*

           -against-                        12-CV-0924

R FURNIA and DOES,                        GTS/ATB

                            *Defendants.*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendant Furnia
The Capitol
Albany, New York  12224-0341

Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 474-3340
Fax:  (518) 473-1572 (Not for service of papers)           Date: February 10, 2014

**Table of Contents**

PRELIMINARY STATEMENT...................................................................1

STATEMENT OF FACTS......................................................................1

ARGUMENT.....................................................................................2

        THE PLAINTIFF CANNOT ESTABLISHED THAT
        DEFENDANT FURNIA WAS DELIBERATELY
        INDIFFERENT TO A SERIOUS MEDICAL NEED OF
        THE PLAINTIFF.................................................................2

CONCLUSION...................................................................................5

APPENDIX

        <u>Lewis v. Havernack</u>, 2013 US Dist LEXIS 48471 (NDNY 2013)
        <u>Johnson v. Brown</u>, 2011 US Dist LEXIS 2967 (NDNY 2011)
        <u>McClendon v. County of Nassau</u>, 2012 US Dist LEXIS 146713 (EDNY 2012)

## PRELIMINARY STATEMENT

This action was commenced by the filing of a complaint on June 7, 2012 by plaintiff, Michael Garcia against defendants R. Furnia and "Other Correction Official." See Dkt. No. 1. A motion to dismiss the complaint was made by defendant Furnia on December 12, 2012. See id. at No. 13. That motion was granted in part and denied in part, with only plaintiff's Eighth Amendment claims of the use of excessive force and medical indifference remaining. See id. at Nos. 17, 20. An answer was thereafter filed on behalf of defendant Furnia on July 8, 2013. See id. at No. 21. This memorandum of law is submitted on behalf of defendant Furnia for partial summary judgment pursuant to FRCP 56, seeking dismissal of plaintiff's medical indifference claim.

## STATEMENT OF FACT

The plaintiff alleges that he was subjected to the use of force by defendant Furnia and two other officers on June 9th, 2011 after a verbal altercation with defendant Furnia outside of the mess hall at lunch time at Clinton Correctional Facility ("Clinton"). See Kerwin aff. at Exh. A, pp. 11, 13-15, 39-43. Following the altercation, the plaintiff was escorted to the E-block housing unit by defendant Furnia and another officer. See id. at pp. 43-46. Upon arriving at E-block, the plaintiff alleges that defendant Furnia and two other officers subjected the plaintiff to force, which defendant Furnia and the other officers entirely deny, while proceeding in the direction of plaintiff's cell. See id. at pp. 50-59, 62; Kerwin aff. at Exh. B. Notwithstanding, the plaintiff testified that, once he asked for medical attention, the officers placed the plaintiff in the shower area instead of proceeding to plaintiff's cell, and defendant Furnia left the area. See Kerwin aff. at Exh. A, pp. 64-65, 70-74. The plaintiff was then escorted to his cell by other officers. See id.

at pp. 65-66.

On the morning of June 10, 2011, the plaintiff complained to a nurse about body soreness and blurriness in one eye. See id. at 66. At lunch time the same day, the nurse provided the plaintiff with Motrin, see id. at pp. 66-67, and cream to clean some superficial cuts. See id. at pp. 78-79. At his deposition, the plaintiff testified that his injuries from the alleged use of force included body soreness, see id. at pp. 66, 75, a black eye, see id. at. p. 80, blurriness in one eye, see id. at p. 75, a loose tooth, see id. and scrapes and minor contusions from the officers' watches. See id. at pp. 77-78. The plaintiff was taken to the medical unit and examined on June 13, 2011 at which time he complained of pain in his back, chest and face, a headache, eye blurriness, a "wobbly" knee and a sore throat. See id. at pp. 83-86. In the days after the plaintiff was allegedly injured he spent his days sleeping. See id. at p. 97.

## ARGUMENT

### THE PLAINTIFF CANNOT ESTABLISHED THAT DEFENDANT FURNIA WAS DELIBERATELY INDIFFERENT TO A SERIOUS MEDICAL NEED OF THE PLAINTIFF

To establish that a defendant violated a plaintiff's Eighth Amendment right to adequate medical care, the plaintiff must show that the defendant was deliberately indifferent to a serious need of the plaintiff. Estelle v. Gamble, 429 US 97, 104 (1976); Smith v. Carpenter, 316 F3d 178, 183 (2d Cir 2003). A serious medical need under the Eighth Amendment "must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway v. Coughlin, 99 F3d 550, 553 (2d Cir. 1996). There is no proof in the record of this case to support a finding that the plaintiff suffered an injury anywhere close to one that is sufficiently serious to implicate the Eighth Amendment.

Plaintiff's testimony and the medical report/photographs from his June 13, 2011 medical examination fail to demonstrate any issue of material fact as to the extent or seriousness of any injuries allegedly sustained on June 9, 2011.  At his deposition, the plaintiff testified that his injuries from the alleged use of force included body soreness, see Kerwin aff. at Exh. A, pp. 66, 75, a black eye, see id. at. p. 80, blurriness in one eye[1], see id. at p. 75, a loose tooth, see id. and scrapes and minor contusions from the officers' watches.[2]  See id. at pp. 77-78. When the plaintiff was taken to the medical unit and examined on June 13, 2011[3], he complained of pain in his back, chest and face, a headache, eye blurriness, a "wobbly" knee and a sore throat.  See id. at pp. 83-86. These types of injuries have been held not to constitute serious medical needs as a matter of law. Lewis v. Havernack, 2013 US Dist LEXIS 48471, **25-28 (NDNY 2013) (holding that injuries to cheek and eyelid not sufficiently serious, and citing cases identifying other minor, insufficiently serious injuries) (attached); Johnson v. Brown, 2011 US Dist LEXIS 29674, *18 (NDNY 2011) (holding that cut lip, bruise over eye and "blue and red spots all over" body not sufficiently serious) (attached); Bradley v. Rell, 703 FSupp2d 109, 121 (NDNY 2010) (finding that headache, blurry vision and leg laceration not sufficiently serious); Dallio v. Hebert, 678 FSupp2d 35, 60 (NDNY 2009) (finding two black eyes, bruising in kidney area, kick marks, open lacerations, headache and numbness not sufficiently serious).

Additionally, even if the plaintiff's alleged injuries were sufficiently serious for purposes

---

1 The plaintiff testified that his eyeglasses were knocked off by defendant Furnia during the allged use of force, see Kerwin aff. at Exh. A. p. 50, and that his current medical provider has prescribed and ordered the plaintiff eyeglasses to correct his eye blurriness. See id. at pp. 99-100.

2 In the days after the plaintiff was allegedly injured he spent his days sleeping. See Kerwin aff. at Exh. A, p. 97. Under such circumstances, the plaintiff cannot prove that he was suffering from injuries that he was suffering from "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F3d 550, 553 (2d Cir. 1996).

3 Injuries claimed at a later time are irrelevant to what injuries the plaintiff allegedly had at the time that the defendant allegedly denied medical care, or as to the seriousness of such injuries at that time.  McClendon v. County of Nassau, 2012 US Dist LEXIS 146713, **19-20 (EDNY 2012).

of the Eighth Amendment, the plaintiff cannot establish that defendant Furnia was deliberately indifferent to the plaintiff's medical needs. To establish that a defendant acted with deliberate indifference, the plaintiff must show that the defendant "knew of and disregarded an excessive risk to inmate health or safety" and was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw the inference". <u>Chance v. Armstrong</u>, 143 F3d 698, 703 (2d Cir 1998). This proof is necessary to establish that the defendant had the requisite culpable state of mind necessary to prove a constitutional violation. <u>Smith</u>, 316 F3d at 183-84.

Plaintiff testified that when he asked for medical attention, defendant Furnia had the plaintiff placed in the shower area, instead of in his cell, and then left the area. <u>See</u> Kerwin aff. at Exh. A, pp. 64-65, 70-74. The plaintiff believed that defendant Furnia directed that the plaintiff be placed in the shower so that he could receive medical attention before being secured in his cell. <u>See</u> id. However, the officers that remained with the plaintiff on E-block did not procure medical attention or the plaintiff at that time, and there is no evidence that such failure had anything to do with defendant Furnia. <u>See</u> id. at pp. 65-66. Further, the plaintiff did receive pain medication, and cream to apply to his minor scrapes the next morning, from a nurse making rounds, <u>see</u> id. at pp. 66-67, 78-79, so the plaintiff did receive medical attention, even if not as quickly as he desired. Under these circumstances, the defendant cannot prove that defendant Furnia was deliberately indifferent plaintiff's serious medical need. As a result, plaintiff's medical indifference claim should be dismissed in its entirety.

## CONCLUSION

For the reasons discussed above, defendant's motion for partial summary judgment should be granted.

Dated: Albany, New York
February 10, 2014

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendant Furnia
The Capitol
Albany, New York  12224-0341

By: s/ Adrienne J. Kerwin
Adrienne J. Kerwin
Assistant Attorney General, of Counsel
Bar Roll No. 105154
Telephone:  (518) 474-3340
Fax:  (518) 473-1572 (Not for service of papers)
Email: Adrienne.Kerwin@ag.ny.gov

TO:      Michael Garcia
04A1214
Plaintiff pro se
Attica Correctional Facility
639 Exchange St
Attica, New York 14011-0149

# APPENDIX



**MARC LEWIS, Plaintiff, v. HAVERNACK, Sergeant, Mt. McGregor Correctional Facility, et al., Defendants.**

**Civil Action No. 9:12-CV-0031 (GLS/DEP)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

**2013 U.S. Dist. LEXIS 48471**

**January 23, 2013, Decided**
**January 28, 2013, Filed**

**SUBSEQUENT HISTORY:** Adopted by, Motion denied by, in part, Claim dismissed by, Motion denied by, Motion granted by Lewis v. Havernack, 2013 U.S. Dist. LEXIS 44743 (N.D.N.Y, Mar. 28, 2013)

**COUNSEL:** [*1] MARC LEWIS, OF COUNSEL, PLAINTIFF, Pro Se, Moravia, NY.

FOR DEFENDANTS: GREGORY J. RODRIGUEZ, ESQ., Assistant Attorney General, OF COUNSEL, HON. ERIC T. SCHNEIDERMAN, Office of the Attorney General, State of New York, Department of Law, Albany, NY.

**JUDGES:** David E. Peebles, U.S. Magistrate Judge.

**OPINION BY:** David E. Peebles

**OPINION**

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Marc Lewis, a New York State prison inmate with considerable prior litigation experience, has commenced this action against five corrections officers employed at the prison facility in which he was confined at the relevant times, pursuant to 42 U.S.C. § 1983, alleging deprivation of his civil rights.[1] In his complaint, plaintiff alleges that he was assaulted by one of the defendants and denied medical attention for his injuries arising from the alleged assault, and that the defendants later conspired to conceal the alleged assault.

As relief, plaintiff's complaint seeks recovery of $3 million in damages.

1    In his complaint Lewis acknowledges having brought several other actions in this court, as well as the Western and Southern districts. *See* Complaint (Dkt. No. 1) at 4-5. A search of the Public Access to Court  [*2] Electronic Records reveals that plaintiff has filed seven other actions, with varying results, including (1) *Lewis v. Martin et al.,* No. 1:94-CV-6873-SHS (S.D.N.Y., filed Sept. 21, 1994) (settled); (2) *Lewis v. DeShore et al.,* No. 1:94-CV-7574-SHS (S.D.N.Y., filed Oct. 19, 1994) (settled); (3) *Lewis v. Rodriguez, et al.,* No. 1:95-CV-3572-TPG (S.D.N.Y. filed May 18, 1995) (dismissed pursuant to 28 U.S.C. § 1915(d)); (4) *Lewis v. Irvin, et al.,* No. 1:97-CV-0789-JTE (W.D.N.Y., filed Oct. 8 1997) (summary judgment granted to the defendants); (5) *Lewis v. Johnson, et al.,* No. 9:08-CV-0482-ATB (N.D.N.Y. filed May 12, 2008) (partial verdict in favor of plaintiff after trial); (6) *Lewis, et al. v. Patterson, et al.,* No. 1:08-CV-1130-LEK-DRH (N.D.N.Y. filed Oct. 20, 2008) (dismissed, and subsequent appeal dismissed); and (7) *Lewis v. Murphy, et al.,* No. 9:12-CV-0268-NAM-CFH (N.D.N.Y., filed Feb. 12, 2012) (pending).

Currently pending before the court is a motion brought by the defendants seeking dismissal of plaintiff's complaint based on his failure to exhaust administrative remedies, and for failure to state a claim as it relates to all of plaintiff's causes of action with the exception of [*3] his Eighth Amendment excessive force claim. For

the reasons set forth below, I recommend that defendants' motion to dismiss for failure to exhaust be denied as premature, without prejudice, but that their motion otherwise be granted.

## I. BACKGROUND[2]

2    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964).

Plaintiff is a New York State prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Complaint (Dkt. No. 1). While he is now incarcerated elsewhere, at the times relevant to his claims in this action, plaintiff was confined in the Mt. McGregor Correctional Facility ("Mt. McGregor"), located in Wilton, New York. *Id.*

During the week of February 19, [*4] 2009, plaintiff filed a complaint with Mt. McGregor Superintendent William T. Hagget, accusing corrections officers of stealing and consuming state food products. Complaint (Dkt. No. 1) at 6. Plaintiff was interviewed by a corrections lieutenant on February 14, 2009, concerning the complaint, and was advised that the matter would be addressed. *Id.*

On February 15, 2009, plaintiff was subjected to an unauthorized search of his prison cell by several corrections officers, all of whom threatened him. Complaint (Dkt. No. 1) at 7. Plaintiff attributes the search and threats to his complaint to Superintendent Hagget concerning the conduct of corrections officers. *Id.* In the morning of February 16, 2009, plaintiff mailed another written complaint regarding corrections officers stealing and consuming state food products to Mt. McGregor Superintendent Hagget and DOCCS Commissioner Brian Fischer. *Id.* at 9.

On February 20, 2009, plaintiff was asked to voluntarily meet with defendant Havernack, a corrections sergeant, to discuss his complaints. Complaint (Dkt. No. 1) at 9. Believing the meeting to be a "set up," plaintiff refused to attend and retreated to his cell. *Id.* After returning to his cell, [*5] defendant Havernack and two other

unidentified officers arrived at plaintiff's cell, placed him in handcuffs, and escorted him to the basement of Mt. McGregor's administration building. *Id.* at 10. Upon arriving, and while still in handcuffs, plaintiff was placed in a chair in front of a desk, behind which defendant Sheridan, a corrections lieutenant, was sitting. *Id.* At some point during the meeting defendant Sheridan stood up, walked behind plaintiff, and struck plaintiff on the right side of the face with a closed fist, rendering Lewis unconscious and knocking him out of his chair. *Id.* at 12. As a result of the incident, Lewis experienced injuries to his right upper facial cheek and lower eyelid, as well as his left upper facial cheek. *Id.* Upon returning to consciousness, plaintiff's several requests for medical attention were denied. *Id.* at 13-14.

Shortly following the incident, defendants Imfeld and Johnson, together with an unidentified corrections sergeant, escorted plaintiff to a waiting van, where he was transported out of Mt. McGregor. Complaint (Dkt. No. 1) at 15. As the van left the facility, plaintiff continued to complain of his injuries and request medical attention. *Id.* [*6] at ¶ 31. Those requests were denied. *Id.* Eventually, after plaintiff threatened to cause an accident if he was not provided medical attention, defendants Imfeld and Johnson returned the van to Mt. McGregor, where plaintiff was taken to the prison infirmary, and ultimately seen by medical personnel. *Id.* at 15-16.

## II. PROCEDURAL HISTORY

Plaintiff's complaint in this action was filed on January 9, 2012. Complaint (Dkt. No. 1). That complaint names Corrections Sergeant Havernack, Corrections Lieutenant Sheridan, and Corrections Officers Chapman, Johnson and Imfeld, all of whom were stationed at Mt. McGregor at the relevant times, as defendants, and sets forth five causes of action, including excessive force and deliberate indifference claims under the Eighth Amendment, a claim for conspiracy to violate his Eighth Amendment rights, and claims that are based upon alleged threats by defendants and the issuance of a false misbehavior report. *Id.*

In answer to plaintiff's complaint, defendants moved for its dismissal on July 3, 2012, arguing that plaintiff's claims are precluded based upon his failure to exhaust available administrative remedies, and additionally that all of his claims, except [*7] the excessive force claim, fail to state a claim upon which relief may be granted. Dkt. No. 30. Plaintiff has since responded in opposition to defendants' dismissal motion. Dkt. No. 42. In addition, plaintiff seeks leave, by motion filed on September 21, 2012, to file an amended complaint in the action. Dkt. No. 46. Plaintiff's motion for leave to amend has been opposed by defendants on the basis of futility. Dkt. No. 47.

The parties' cross-motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Dismissal Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon a court to gauge the facial sufficiency of that pleading using a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). [*8] Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to [*9] 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)) (internal citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal [*10] quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A *pro se* complaint must be read liberally.").

### B. Exhaustion of Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); *Hargrove v. Riley*, No. 04-CV-4587, 2007 U.S. Dist. LEXIS 6899, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983.").[3] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, [*11] whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002).

3   Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Bock*, 549 U.S. 199, 212, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). In the event the defendant establishes that the inmate plaintiff failed "to fully complete[] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal.

*Pettus v. McCoy*, No. 04-CV-0471, 2006 U.S. Dist. LEXIS 65221, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).

Here, defendants argue that plaintiff's [*12] claims are barred based upon plaintiff's alleged failure to comply with the exhaustion requirement pursuant to the PLRA. Defs.'s Memo. of Law (Dkt. No. 30, Attach. 1) at 5-7. In support, defendants have filed a declaration from Jeffrey Hale, the Assistant Director of the Inmate Grievance Program with DOCCS, who avers that, based on an examination of DOCCS's records, plaintiff "did not pursue a grievance appeal to CORC regarding an incident date of February 15, 2009[,] or February 20, 2009, including the issues presented in this action[.]" Hale Decl. (Dkt. No. 30, Attach. 3) at ¶ 4. In response, plaintiff concedes that he did not file a grievance with regard to the alleged assault on February 20, 2009, because he argued these issues, instead, "at his multiple hearing proceedings," including "Superintendent hearing proceedings" -- which I have presumed to be a reference to a disciplinary hearing -- and his administrative appeal to the Commissioner. Plf.'s Memo. of Law (Dkt. No. 42) at 9-10.

The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred. [*13] *See, e.g., Laporte v. Fisher*, No. 11-CV-9458, 2012 U.S. Dist. LEXIS 154203, 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012) ("Dismissal pursuant to Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 251, (S.D.N.Y. 2003)). In this instance, plaintiff's complaint alleges that he filed more than one grievance related to the facts in his complaint, and that his grievance was denied. Complaint (Dkt. No. 1) at 4. Plaintiff's complaint also alleges that he filed complaints to the DOCCS Commissioner, as well as the Superintendent at Mt. McGregor. *Id.* Considering these allegations, which are contained in the four corners of plaintiff's complaint, I conclude that there is sufficient doubt as to whether plaintiff exhausted his administrative remedies to deny defendants' motion to dismiss on this ground. *See Laporte*, 2012 U.S. Dist. LEXIS 154203, 2012 WL 5278543, at *5 (holding that, absent a clear indication from the face of the complaint that a plaintiff

has failed to exhaust, dismissal pursuant to Rule 12(b)(6) is not appropriate).

While defendants have submitted extrinsic evidence, including the Hale declaration, calling into question [*14] plaintiff's representation that exhaustion has been accomplished, such extrinsic materials are not properly considered on a motion to dismiss. It is true that one potential course would be to convert the motion into one for summary judgment, pursuant to Rule 12(d), so that the extrinsic materials would then properly be considered. *See McCoy*, 255 F. Supp. 2d at 251 ("If nonexhaustion is not clear from the face of the complaint, a defendant's motion to dismiss should be converted . . . to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused."). I recommend against conversion, however, since the plaintiff has not been put on notice that such a conversion was a possibility, or of the possible consequences of such a conversion. *See Hernandez v. Coffey*, 582 F.3d 303, 308 (2d Cir. 2009) ("[A]bsent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 [governing motions for summary judgment] . . . he or she must be so informed by the movant in the [*15] notice or, failing that, by the district court.").

Moreover, although plaintiff has apparently conceded that he did not "proper[ly] exhaust[]" his claims, *Woodford*, 548 U.S. at 95, relating to the February 20, 2009 incident, he argues that he satisfied his exhaustion obligation by making his arguments during "multiple hearing proceedings," including "Superintendent hearing proceedings" and on appeal after he was found guilty. Plf.'s Memo. of Law (Dkt. No. 42) at 9. I note that "under certain circumstances, an inmate may exhaust his administrative remedies by raising his claim during a related disciplinary proceeding." *Murray v. Palmer*, No. 03-CV-1010, 2010 U.S. Dist. LEXIS 32014, 2010 WL 1235591, at *3 (Mar. 31, 2010) (Suddaby, J.) (emphasis omitted), *accord, Barksdale v. Frenya*, No. 10-CV-0831, 2012 U.S. Dist. LEXIS 134734, 2012 WL 4107805, at *8 (N.D.N.Y. Sept. 19, 2012) (Peebles, M.J.), *adopted in its entirety by* 2012 U.S. Dist. LEXIS 134734, 2012 WL 4107801 (D'Agostino, J.); *but see LaBounty v. Johnson*, 253 F. Supp. 2d 496, 501-02 (W.D.N.Y. 2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance." (citing *McNair v. Sgt. Jones*, No. 01-CV-3253, 2002 U.S. Dist. LEXIS 17409, 2002 WL 31082948, at *7 (S.D.N.Y. Sept. 18, 2002)). [*16] Because the reasons for plaintiff's choice to pursue his complaints through a disciplinary proceeding are far

from clear at this early stage of the action, I am unable to make a determination as to whether plaintiff may be excused from properly exhausting his administrative remedies.

For all of these reasons, I recommend that defendants' motion to dismiss on the basis of plaintiff's alleged failure to exhaust be denied, without prejudice to defendants' right to raise the defense at a point when it can be analyzed based upon a more fully developed record.

## C. Eleventh Amendment

Plaintiff's complaint alleges that, at the relevant times, the named defendants were acting both in their individuals and official capacities in violating the plaintiff's constitutional rights. Complaint (Dkt. No. 1) at 1. In their motion to dismiss, defendants argue that, to the extent they are sued in their official capacities, plaintiff's claims are precluded under the Eleventh Amendment. Defs.' Memo. of Law (Dkt. No. 30) at 7-8.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); [*17] *Cory v. White*, 457 U.S. 85, 90-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). This absolute immunity, which states enjoy under the Eleventh Amendment, extends to both state agencies and state officials sued for damages in their official capacities when the essence of the plaintiff's claim seeks recovery from the state as the real party in interest.[4] *See, e.g., Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.) ("[A] suit which seeks a money judgment 'which must be paid from the state treasury is barred by the Eleventh Amendment,' even though it is nominally asserted against an individual official." (quoting *Edelman*, 415 U.S. at 663)); *see also Richards v. State of New York App. Div., Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing, *inter alia, Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694, (1982)). "To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[5] *Ying Jing Gan*, 996 F.2d at 529; *see also Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("Suits against [*18] state officials in their official capacity therefore should be treated as suits against the State.").

4    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the

states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham Cnty.*, 547 U.S. 189, 193, 126 S. Ct. 1689, 164 L. Ed. 2d 367 (2006).

5    By contrast, the Eleventh Amendment does not preclude lawsuits seeking to impose individual or personal liability on state officials under section 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).

Plaintiff's damage claims in this action against the named-defendants in their official capacities are, in reality, claims against the State of New York. *Daisernia*, 582 F. Supp. at 798-99. They are therefore subject to dismissal. Accordingly, I recommend that, to the extent that any of the claims asserted in plaintiff's complaint are asserted against any of the named-defendants in their official capacities, those claims be dismissed with prejudice.

## D. Deliberate [*19] Medical Indifference

Plaintiff's complaint alleges that he requested and was denied immediate medical treatment by various correctional officers, including defendants Imfeld and Johnson, after he was allegedly punched and rendered unconscious by defendant Sheridan on February 20, 2009. Complaint (Dkt. No. 1) at 13-14. Plaintiff's complaint also alleges that he was not provided medical assistance until, while being transferred out of Mt. McGregor and into another facility, he threatened to cause an accident on the highway if defendants Imfeld and Johnson did not return him to the Mt. McGregor infirmary. *Id.* at 15-16. Defendants argue that the nature of plaintiff's alleged injuries and the modest delay in providing plaintiff medical treatment do not give rise to a plausible claim for medical indifference. Defs.' Memo. of Law (Dkt. No. 30, Attach. 1) at 8-10.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) [*20] (internal citations omitted)). While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010). To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of [*21] adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care . . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal citations omitted).

The second inquiry of the objective test requires a court to look at the seriousness of the inmate's medical condition if the plaintiff alleges a complete failure to provide treatment. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment was provided but was inadequate, the second [*22] inquiry of the objective test is narrowly confined to that specific alleged inadequacy, rather than focusing upon the seriousness of the prisoner's medical condition. *Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, [the focus of the] inquiry [is] on the

challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of [*23] a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer*, 511 U.S. at 837); *see also Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord*, No. 97-CV-1385, 1998 U.S. Dist. LEXIS 15956, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 839-40).

Applying this legal framework to this action, I conclude that plaintiff's complaint fails to allege facts that plausibly satisfy either the objective or subjective requirements. First, although plaintiff's complaint alleges that defendants Imfeld and Johnson denied him medical care shortly after he regained consciousness, it does not provide a time frame indicating how long they denied plaintiff medical care. *See generally* Complaint (Dkt. No. 1) at 13-16.. Plaintiff's complaint does show that, at some point after, and on the same day of, the alleged assault by defendant Sheridan, he was treated at the Mt. McGregor infirmary for his injuries. *Id.* at 16. Accordingly, I am unable to determine whether the [*24] facts alleged plausibly suggest that defendants Imfeld and Johnson acted unreasonably under the circumstances as it relates to how quickly they provided plaintiff with medical treatment. *See Salahuddin*, 467 F.3d at 279-80 ("Thus, prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishment Clause[.]" (internal quotation marks and alterations omitted)); *see also Herbert v. NYC Dep't of Corrs.*, No. 10-CV-8799, 2012 U.S. Dist. LEXIS 120167, 2012 WL 3834660, at *4 (S.D.N.Y. Aug. 21, 2012) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff "concede[d] . . . that he ultimately did receive medical treatment on the same days that he alerted Captains Williams and Brown to his condition"); *Sonds v. St. Barnabas Hosp. Corr. Health Svcs.*, 151 F. Supp. 2d 303, 312

(S.D.N.Y. May 21, 2001) (finding that the plaintiff's complaint failed to state a claim for deliberate indifference where the plaintiff suffered an injury to his finger and waited for three and one-half hours for treatment).

In addition, and more persuasively, plaintiff's complaint fails to allege facts plausibly suggesting that the alleged [*25] denial of medical care was "sufficiently serious." *See Salahuddin*, 467 F.3d at 280 (requiring, when conducting the objective test, to determine, at the second inquiry, whether "the inadequacy of medical care is sufficiently serious"). To make this determination when a plaintiff, as in this case, alleges a "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious." *Id.* (citing *Smith*, 316 F.3d at 185-86). Plaintiff's complaint alleges only that he suffered injuries to his "upper facial cheek and lower eyelid, as well as [his] left upper cheek" after being punched just once. Complaint (Dkt. No. 1) at 12. These allegations regarding his injuries do not plausibly suggest that plaintiff's daily activities were "significantly affect[ed]," or that his condition "cause[d] chronic or substantial pain." *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (listing that some of the factors relevant to determining the seriousness of a medical condition include "the presence of a medical condition that significantly affects an individual's activities[,] or the existence of a chronic and substantial pain"). In addition, these allegations [*26] suggest plaintiff suffered only minor injuries, which are not sufficiently serious to state a deliberate indifference claim under the Eighth Amendment. *See, e.g., Harris v. Morton*, No. 05-CV-1049, 2008 U.S. Dist. LEXIS 15656, 2008 WL 596891, at *3, n.2 (N.D.N.Y. Feb. 29, 2008) (Kahn, J. and Treece, M.J.) (noting that, although plaintiff stated he suffered from a "snapped" neck, he had not indicated that he suffered from anything other than a generic neck injury); *Bennett v. Hunter*, No. 02-CV-1365, 2006 U.S. Dist. LEXIS 24737, 2006 WL 1174309, *3 (N.D.N.Y. May 1, 2006) (Scullin, S.J. and Lowe, M.J.) (finding that a pinched nerve in one's wrist is not a serious medical need); *Jones v. Furman*, No. 02-CV-939F, 2007 U.S. Dist. LEXIS 20336, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (finding that soreness, pain in, and a lump behind, his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs, and legs, do not constitute the requisite serious medical need) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998)); *Tapp v. Tougas*, No. 05-CV-0149, 2008 U.S. Dist. LEXIS 82973, 2008 WL 4371766, at * 9 (N.D.N.Y. Aug. 11, 2008) (Peebles, M.J.), *Report and Recommendation Adopted in Part and Rejected in Part*, 2008 U.S. Dist. LEXIS 76170, 2008 WL 4371762 (N.D.N.Y. Sept. 18, 2008) [*27] (Mordue, C.J.), (noting that a "dull pain" in plaintiff's back and kidney area and persistent rash on plaintiff's foot did not raise a constitutional issue) (citing *Peterson v. Miller*, No. 04-CV-0797, 2007 U.S. Dist. LEXIS 50958, 2007 WL 2071743, at *7 (N.D.N.Y. July 13, 2007) (Hurd, J. and Peebles, M.J.); *Salaam v. Adams*, No. 03-CV-0517, 2006 U.S. Dist. LEXIS 70963, 2006 WL 2827687, *10 (N.D.N.Y. Sept. 29, 2006) (Kahn, J. and Lowe, M.J.) (finding that plaintiff's injuries did not constitute a serious medical condition where plaintiff suffered from intermittent back pain requiring pain relievers and physical therapy, a gastrointestinal problem with stomach pains, and a psychological problem requiring Wellbutrin and/or Neurontin); *see also Ford v. Phillips*, No. 05-CV-6646, 2007 U.S. Dist. LEXIS 25226, 2007 WL 946703, at *12 & n.70 (S.D.N.Y. Mar. 27, 2007) (finding that plaintiff's allegations of bruises, abrasions, slight bleeding, and scratches, did not constitute a sufficiently serious condition giving rise to a medical indifference claim); *Sonds*, 151 F. Supp. 2d at 311 (holding that a cut finger, even where the skin had "ripped off" was insufficiently serious); *Bonner v. New York City Police Dep't*, No. 99-CV-3207, 2000 U.S. Dist. LEXIS 11738, 2000 WL 1171150, at *4 (S.D.N.Y. Aug. 17, 2000) (holding [*28] that the inability to "close" a finger due to swelling in one's hand is insufficiently serious to constitute Eighth Amendment violation); *Gomez v. Zwillinger*, 1998 U.S. Dist. LEXIS 17713, at *16 (S.D.N.Y. November 6, 1998) (holding that back pain and discomfort were not sufficiently serious); *Jones v. New York City Health & Hosp. Corp.*, No. 84-CV-5372, 1984 U.S. Dist. LEXIS 21694, 1984 WL 1280 at *1 (S.D.N.Y. November 28, 1984) (dismissing claim for deliberate medical indifference where plaintiff challenged treatment for bruises on head and body). Even construing his complaint in the light most favorable to plaintiff, I am unable to conclude that the allegations meet the objective test for a deliberate indifference claim.[6]

6    While not considered in making a recommendation concerning defendants' 6 dismissal motion, the medical records submitted by plaintiff in opposition to the pending motion substantiate defendants' contention that, as a result of the alleged assault, Lewis did not suffer a "sufficiently serious" medical condition. *See* Plaintiff's Response (Dkt. No. 46) at 40-42; *see also Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.) ("[I]n cases where a *pro se* plaintiff is faced with a [*29] motion to dismiss, it is appropriate for the court to consider matters outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'"). Those records reveal that, as a result of defendant Sheridan's alleged actions, Lewis suffered from only moderate swelling to his cheek and eyelid, with no other evidence of

injury or trauma. Plf.'s Response (Dkt. No. 46) at 41. They also note that, during the examination, plaintiff was argumentative and refused ice offered to address his swelling. *Id.* at 40.

Finally, even if I were to find that the allegations in plaintiff's complaint satisfy the objective test, they would not meet the subjective test. There are simply no allegations in plaintiff's complaint to plausibly suggest that, in denying plaintiff's requests for medical care, defendants Imfeld and Johnson acted with "deliberate indifference." *Salahuddin*, 467 F.3d at 280. The complaint, in contrast, alleges only that defendants Imfeld and Johnson denied plaintiff's request for medical care "after seeing [plaintiff's] injuries." Complaint (Dkt. No. 1) at 14. Bearing in mind that plaintiff's complaint provides little details as to the nature of his injuries, [*30] and only alleges that Lewis sustained an injury to his cheeks and an eyelid, I cannot conclude that, even assuming that defendants Imfeld and Johnson did deny plaintiff's medical care, that they were "actually aware of a substantial risk" to plaintiff's health in so doing. *See Salahuddin*, 467 F.3d at 280 (holding that deliberate indifference "requires that the charged official act . . . while actually aware of a substantial risk that serious inmate harm will result").

For all of these reasons, I recommend that defendants' motion to dismiss for failure to state a claim be granted as to plaintiff's deliberate indifference claim against defendants Imfeld and Johnson.

E. Plaintiff's Claims of Threats and Harassment

Plaintiff's complaint alleges that, on February 15, 2009, as a prelude to the assault by defendant Sheridan, he was threatened and harassed by corrections officers, including defendant Havernack. Complaint (Dkt. No. 1) at 7. In their motion, defendants also seek dismissal of any claims that may be asserted by those allegations. Defs.' Memo. of Law (Dkt. No. 30, Attach. 1) at 10-11.

It is well recognized that "42 U.S.C. § 1983 [*31] is not designed to rectify harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998). Thus, "[v]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation." *Carpio v. Walker*, No. 95-CV-1502, 1997 U.S. Dist. LEXIS 16173, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J. and DiBianco, M.J.) (citing *Purcell*, 790 F.2d at 265 (holding that name-calling is insufficient to allege a constitutional violation)); *see also Moncrieffe v. Witbeck*, No. 97-CV-253, 2000 U.S. Dist. LEXIS 9425, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding allegations that the defendants

laughed at the plaintiff while he showered did not give rise to liability under section 1983); *Alnutt v. Cleary*, 913 F. Supp. 160, 165 (W.D.N.Y. Jan. 8, 1996) ("It is well established that[] mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").

In this instance, because plaintiff's allegations of threats are insufficient to support a claim under section 1983, I recommend [*32] that defendants' motion to dismiss as it relates to plaintiff's claims of verbal threats against defendant Havernack be granted.

F. Conspiracy

Plaintiff's complaint alleges the existence of a conspiracy among the defendants and other prison officials to cover-up the events giving rise to this action and falsify official documents in order to suggest that plaintiff's injuries were self-inflicted. Complaint (Dkt. No. 1) at 13, 16. Specifically, plaintiff alleges that defendants Chapman and Imfeld conspired to violate his constitutional rights when they allegedly drafted a false misbehavior report accusing Lewis of self-inflicting the injuries, which plaintiff alleges, resulted from defendant Sheridan's assault. *Id.* at 16. Plaintiff also alleges that defendant Sheridan and Havernack conspired to conceal defendant Sheridan's alleged assault on plaintiff by moving plaintiff into a different room after the alleged assault, and refusing to provide plaintiff with immediate medical care. *Id.* at 13. Defendants seek dismissal of these claims, arguing that plaintiff's complaint fails to allege facts plausibly suggesting a conspiracy, and, in any event, the claims are barred by the intra-agency conspiracy [*33] doctrine. Defs.' Memo. of Law (Dkt. No. 30, Attach. 1) at 11-12.

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995). "A complaint containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

As it relates to plaintiff's claim of conspiracy against defendants Chapman and Imfeld, "a prison inmate has no general right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Applewhite v. Sheahan*, No. 08-CV-6045, 2013 U.S. Dist. LEXIS 4640, 2013 WL 144957, at *10 (W.D.N.Y. Jan. 11, 2013) (dismissing the

plaintiff's claim arising from allegations that the defendant filed a false misbehavior report against the plaintiff to disguise the fact that the defendant [*34] stole the plaintiff's legal books. "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862. Where an alleged false misbehavior report is filed against a prisoner, his "due process rights are protected if he is granted a hearing on the charges and given an opportunity to rebut them[.]" *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995).

Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report. *See Boddie*, 105 F.3d at 862 (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report). For this reason, I recommend defendants' motion to dismiss be granted as it relates to plaintiff's conspiracy claim asserted against defendants Chapman and Imfeld.

As it relates to the conspiracy claim against defendants Sheridan and Havernack, I likewise find that plaintiff has failed to state a claim because there is no constitutional [*35] right to be free from the cover-up of a past constitutional violation. Generally, the case law that addresses allegations that a defendant conspired to conceal a violation of a plaintiff's constitutional rights assess whether the allegations are sufficient to state a claim of conspiracy for denying the plaintiff's constitutional right to access the courts. *See, e.g., McGarty v. Town of Carmel*, 997 F. Supp. 435, 437 (S.D.N.Y. 1998) (finding that, "for purposes of a motion to amend, plaintiff has made an adequate showing of deprivation of access to courts, and plaintiff's assertions are sufficient to state a [section] 1983 conspiracy claim" where the pleadings alleged that the defendants conspired to conceal evidence that they used excessive force). Here, however, plaintiff has failed to allege any facts that plausibly suggest that his right to access the courts has been denied. Indeed, plaintiff's complaint fails to allege any facts that plausibly suggest that any of plaintiff's constitutional rights have been violated as a result of the alleged conspiracy between defendants Sheridan and Havernack to conceal defendant Sheridan's alleged assault. For this reason, I recommend that defendants' [*36] motion to dismiss plaintiff's conspiracy claim as against defendants Sheridan and Havernack be granted.

For the sake of completeness, I will also briefly address whether plaintiff's conspiracy claims are barred, as argued by defendants, by the intracorporate conspiracy doctrine. That doctrine provides that "there is no con-

spiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation, acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *See, e.g., Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008). While the Second Circuit has applied this doctrine in the context of claims arising under 42 U.S.C. § 1985, *see, e.g., Herrmann*, 576 F.2d at 459; *Girard v. 94th and Fifth Ave. Corp.*, 530 F.2d 66, 72 (2d Cir. 1976), it has not considered the doctrine's applicability to conspiracy claims arising under section 1983. *See Alvarez v. City of New York*, No. 11-CV-5464, 2012 U.S. Dist. LEXIS 176840, 2012 WL 6212612, at *3 and n.21 (S.D.N.Y. Dec. 12, 2012) (finding that the Second Circuit has "applied the intracorporate conspiracy doctrine to Section 1985 claims[, [*37] b]ut it has not considered its applicability to conspiracy claims brought under Section 1983"); *see also Appel v. Spiridon*, No. 06-CV-1177, 2011 U.S. Dist. LEXIS 92363, 2011 WL 3651353, at *19 (D. Conn. Aug. 18, 2011) (same). Because several district courts within this circuit have applied the doctrine to section 1983 claims,[7] and I have not found any controlling authority to the contrary, I find that the intracorporate conspiracy doctrine applies to the conspiracy claims against defendants Chapman and Imfeld arising under section 1983.

> 7   *See Anemone v. Metro. Transp. Auth.*, 419 F. Supp. 2d 602, 603-04 (S.D.N.Y. 2006) ("In the absence of controlling contrary authority, this court will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims because the doctrine's logic is sound."); *Jackson v. New York State*, 381 F. Supp. 2d 80, 90 (N.D.N.Y. 2005) (Munson, J.); *Kamara v. City of New York*, No. 03-CV-0337, 2005 U.S. Dist. LEXIS 41754, 2005 WL 3113423, at *7 (E.D.N.Y. Nov. 21, 2005); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 168-69 (S.D.N.Y. 1999).

As it relates to the conspiracy claims against defendants Sheridan and Havernack, however, I find that the "personal stake" exception to the [*38] intracorporate conspiracy doctrine precludes its applicability. Under this exception, the doctrine does not apply "to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Bd. of Educ. of the City of New York*, No. 97-CV-1337, 1999 U.S. Dist. LEXIS 3164, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). For the exception to apply, "[t]he plaintiff must . . . allege that [the defendants] acted other than in the normal course of their corporate duties." *Girard*, 530 F.2d at 72 (internal quotation marks omitted). Here, plaintiff's complaint clearly

alleges that defendants Sheridan and Havernack allegedly moved plaintiff from the location where he was allegedly assaulted while he was still unconscious and refused him immediate medical care in an attempt to conceal defendant Sheridan's alleged assault on plaintiff. Complaint (Dkt. No. 1) at 13. These allegations plausibly suggest that defendants Sheridan and Havernack acted in their own personal interest, not in the interest of DOCCS, in covering up defendant Sheridan's alleged excessive force. *See Hill v. City of New York*, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the plaintiff's [*39] allegations that the defendants conspired to cover-up one of the defendant's alleged use of excessive force was sufficient to apply the "personal stake" exception to the intracorporate conspiracy doctrine); *Alvarez*, 2012 U.S. Dist. LEXIS 176840, 2012 WL 6212612, at *3 (same). I therefore recommend a finding that the intracorporate conspiracy doctrine does not apply to plaintiff's conspiracy claims against defendants Sheridan and Havernack.

G. Plaintiff's Motion for Leave to Amend

In response to defendants' motion, plaintiff has requested leave to amend to his complaint. Dkt. No. 46. In his proposed amended complaint, plaintiff eliminates the claims of threats and conspiracy. *See generally* Dkt. No. 46, Attach. 2. However, the proposed amended complaint retains a medical indifference claim against defendants Sheridan, Chapman, Imfeld, and Johnson. *Id.* at 13. Defendants oppose plaintiff's motion for leave to amend, arguing that the claims set forth in his proposed amended complaint are futile in light of his failure to exhaust administrative remedies, and that the allegations set forth in that pleading do not cure the deficiencies as it relates to the medical indifference cause of action. Dkt. No. 47 at 4-11.

Motions [*40] for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted -- circumstance that is not applicable here -- a party may amend its pleading "only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.*, No 98-CV-3662, 2000 U.S. Dist. LEXIS 3540, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman*).

Notwithstanding the familiar and well accepted principle that leave to amend should be granted freely, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion, then permitting amendment would be an act of futility that should not be sanctioned. *See, e.g., Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 124 (E.D.N.Y. 1996); *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995). [*41] If, on the other hand, a "proposed claim sets forth facts and circumstances which may entitle the plaintiff to relief, then futility is not a proper basis on which to deny amendment." *Saxholm*, 938 F. Supp. at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat*, 875 F. Supp. 1022, 1029 (S.D.N.Y. 1995)).

As is the case with respect to his original complaint, plaintiff's proposed amended complaint sets forth a plausible cause of action for the use of excessive force as against defendant Sheridan.[8] Dkt. No. 46, Attach. 2 at 6. Moreover, plaintiff's proposed amended complaint, like his original complaint, alleges that plaintiff fulfilled his obligation to exhaust administrative remedies before filing suit. Dkt. No. 46, Attach. 2 at 3-4. The proposed amended complaint similarly asserts a medical indifference claim, as does its predecessor, but does not cure the deficiencies identified in this report and recommendation. For example, plaintiff's proposed amended complaint fails to allege facts plausibly suggesting that his injuries were "sufficiently serious." *See Salahuddin*, 467 F.3d at 280 (finding that, to determine whether "the inadequacy of medical care is sufficiently serious" [*42] when a plaintiff alleges "failure to provide any treatment," the court "examine[s] whether the inmate's medical condition is sufficiently serious."). Instead, plaintiff's proposed amended complaint alleges only that his face "swelled up . . . with his right eye shut closed" and that he experienced pain as a result of his injuries. Dkt. No. 46, Attach. 2 at 8. As a result, I find that it would be futile to permit plaintiff to file his proposed amended complaint, and therefore recommend that his motion for leave to amend be denied.

8   The amended complaint also alleges the failure on the part of other corrections officers to intervene and protect him from the assault. A corrections officer who did not participate in an assault upon an inmate, but was present while it occurred, may nonetheless bear responsibility for any resulting constitutional deprivation. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). A law enforcement official is under an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in [section 1983] [*43] liability where an officer observes exces-

sive force being used or has reason to know that it will be used."); *Anderson*, 17 F.3d at 557; *Mowry v. Noone*, No. 02-CV-6257, 2004 U.S. Dist. LEXIS 28225, 2004 WL 2202645, at *4 (W.D.N.Y. Sept. 30, 2004). In order to establish liability on the part of a defendant under this theory, the plaintiff must adduce evidence establishing that (1) the officer had a realistic opportunity to intervene and prevent the harm, (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated, and (3) that officer does not take reasonable steps to intervene. *Henry v. Dinelle*, No. 9:10-CV-0456, 2011 U.S. Dist. LEXIS 136583, 2011 WL 5975027, at *4 (N.D.N.Y. Nov. 29, 2011) (Suddaby, J.) (citing *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *Cf., Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) (finding that "liability in a [section] 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams*, 474 U.S. 327, 335-36, 106 S. Ct. 662, 667, 88 L. Ed. 2d 662 (1986)).

## H.   [*44] Whether to Permit Further Amendment

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (permitting leave to replead granted where court could "not determine that the plaintiffs would not, under any circumstances, be able to allege a civil RICO conspiracy"). Given the procedural history of this action, I must next determine whether to recommend that plaintiff be afforded the benefit of this general rule.

As plaintiff seemingly recognizes, and as is reflected in his proposed amended complaint, the claims arising from allegations of the issuance of false misbehavior reports, harassment, threatening conduct, and conspiracy are not plausibly stated, nor are they likely to be in any future amended complaint. *See generally* Dkt. No. 46, Attach. 2. In contrast, while I also have significant reservations   [*45] as to plaintiff's ability to state facts demonstrating the existence of a cognizable medical indifference claim for the reasons set forth above, I nonetheless recommend that he be granted leave to amend in

order to attempt to plead facts that would support such a claim.

In formulating a new, amended complaint, plaintiff is advised that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, No. 94-CV-1594, 1995 U.S. Dist. LEXIS 7136, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). In his amended complaint, plaintiff therefore must clearly set forth the facts that give rise to the claim, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should specifically allege facts demonstrating the specific involvement of each of the   [*46] named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action states a plausible claim for use of excessive force against defendant Sheridan. However, his complaint fails to state a cognizable claim for medical indifference, filing a false misbehavior report, threats and harassment, and conspiracy against any of defendants.[9] I therefore recommend dismissal of those claims, with leave to file a proposed amended complaint, in accordance with the local rules of practice for this court, with respect to the plaintiff's medical indifference claim only.

9     In their motion, defendants also address a potential due process claim arising from plaintiff's allegation that he was issued a false misbehavior report by corrections officials during the relevant time. Defs.' Memo. of Law (Dkt. No. 30, Attach. 1) at 12-13. As discussed above in connection with plaintiff's conspiracy claim against defendants Chapman and Imfeld, the mere allegation that a false misbehavior report has been filed against   [*47] an inmate does not implicate constitutional conduct. *Boddie*, 105 F.3d at 862; *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d at 862; *see also Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988). In this instance, none of the allegations contained in

2013 U.S. Dist. LEXIS 48471, *

plaintiff's complaint plausibly suggest that the alleged misbehavior report was issued to further a violation of plaintiff's constitutional rights. As a result, I recommend that this claim, to the extent it is asserted in plaintiff's complaint, be dismissed.

Turning to defendants' argument that plaintiff's complaint should be dismissed on the basis of plaintiff's alleged failure to exhaust his administrative remedies, I conclude that the issue cannot be determined at this early stage of the litigation. As a result, I recommend that this portion of defendants' motion be denied, without prejudice to renewal upon a more robust record, either on motion for summary judgment or at trial.

Based upon the foregoing it is therefore hereby respectfully

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 30) be GRANTED, and [*48] that all of plaintiff's claims, except those based upon defendant Sheridan's alleged assault of plaintiff, asserted against defendants in their individual and official capacities be DISMISSED; and it is further

RECOMMENDED that plaintiff be given leave to replead only with respect to his deliberate medical indifference cause of action; and it is further

RECOMMENDED that plaintiff's motion for leave to amend (Dkt. No. 46) be DENIED, without prejudice to his right to submit an amended complaint to the court that cures the deficiencies identified in this report and recommendation.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: January 23, 2013

Syracuse, New York

/s/ David E. Peebles

David E. Peebles

U.S.   [*49] Magistrate Judge



**KATHY ENDERSBY, Plaintiff, vs. MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, Defendant.**

**NO. CIV-09-1034-HE**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

**2011 U.S. Dist. LEXIS 2967**

**January 11, 2011, Decided**
**January 11, 2011, Filed**

**COUNSEL:** [*1] For Kathy Endersby, Plaintiff: Darren Todd Rackley, Troutman & Troutman PC, Tulsa, OK.

For Michael J Astrue, Commissioner of the Social Security Administration, Defendant: Linda H Green, Social Security Administration-DALLAS, Dallas, TX.

**JUDGES:** JOE HEATON, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOE HEATON

**OPINION**

**ORDER**

Plaintiff Kathy Endersby filed this action seeking judicial review of the defendant Commissioner's final decision denying her application for supplemental security income benefits. Consistent with 28 U.S.C. § 636(b)(1)(B), the case was referred to Magistrate Judge Doyle W. Argo, who has recommended that the Commissioner's decision be affirmed. The plaintiff has filed an objection to the Report and Recommendation, reurging arguments made to the magistrate judge.

The plaintiff filed her application for benefits in April, 2007, and, when it was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). After the hearing at which the plaintiff appeared with a non-attorney representative and a medical expert testified, the ALJ issued his decision concluding that the plaintiff was not disabled. When the Appeals Council denied the plaintiff's

request for [*2] review, the ALJ's decision became the final decision of the Commissioner.

Having given the plaintiff's objections de novo review, the court agrees with the magistrate judge that the ALJ properly evaluated the medical opinion of plaintiff's treating physician [1] and that the ALJ's finding that plaintiff's mental impairments were not severe in the absence of substance abuse was supported by substantial evidence. In her objections plaintiff cites evidence supporting her position while ignoring other parts of the record. [2] As the magistrate judge noted, "[w]hile there is certainly evidence of record to support Plaintiff's argument that her mental impairment is severe even when she is not abusing drugs, it is not the Court's function to reweigh the evidence or substitute its judgment for that of the Commissioner." Report and Recommendation, p. 14.

> 1    *Plaintiff criticizes the ALJ and magistrate judge for not discussing the length and nature of her treating relationship with her physician, Dr. Mitchell. Plaintiff's objections, p. 10 n.8. While those factors were not explicitly discussed, as the magistrate judge noted, "the decision need not include an explicit discussion of each factor," so long* [*3] *as the record reflects the weight the ALJ gave the opinion and the reasons for that weight. Report and Recommendation, p. 6.*
> 2    *The court does not agree with plaintiff that the magistrate judge "fill[ed] in the gaps of the ALJ's overly vague reasoning with evidence never mentioned in his decision." Plaintiff's Objections, p. 5*

2011 U.S. Dist. LEXIS 2967, *

The court, having reviewed the record and considered plaintiff's arguments, agrees with the magistrate judge's analysis and adopts his Report and Recommendation.. Accordingly, the Commissioner's decision is **AFFIRMED.**

    **IT IS SO ORDERED**

Dated this 11th day of January, 2011.

/s/ Joe Heaton

JOE HEATON

UNITED STATES DISTRICT JUDGE



**JAMES MCCLENDON, Plaintiff, -against- COUNTY OF NASSAU, LAWRENCE MULVEY, Police Commissioner of Nassau County Police Department, RICHARD SOTO, Police Sergeant, JAMES TOBIN, Police Officer, RAYMOND BUTTA-CAROLI, Police Officer, JOHN ADERSON, Police Officer, BRANDON HILLMAN, Police Officer, LAURA SVENTORAITIS, Police Officer and KEITH FAIVR, Police Officer, in their official and individual capacities, Defendants.**

**11-CV-0190 (SJF)(ETB)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2012 U.S. Dist. LEXIS 146713**

**October 11, 2012, Decided**
**October 11, 2012, Filed**

**PRIOR HISTORY:** People v. McClendon, 92 A.D.3d 959, 939 N.Y.S.2d 530, 2012 N.Y. App. Div. LEXIS 1594 (N.Y. App. Div. 2d Dep't, 2012)

**COUNSEL:** [*1] James McClendon, Plaintiff, Pro se, Ogdensburg, NY.

For laura sventoraitis, Police Officer, Keith Faivr, Police Officer, Lawrence Mulvey, Police Commissioner of Nassau County Police Department, Richard Soto, Police Sergeant, James Tobin, Police Office, Raymond Butta-caroli, Police Office, John Anderson, Police Office, Po-lice Officer Brandon Hillman, Police Office, Defendants: Peter A Laserna, Office of the Nassau County Attorney, Mineola, NY.

**JUDGES:** Sandra J. Feuerstein, United States District Judge.

**OPINION BY:** Sandra J. Feuerstein

**OPINION**

**MEMORANDUM AND ORDER**

FEUERSTEIN, J.

On January 7, 2011, incarcerated pro se plaintiff James McClendon ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 against defendants Nassau County (the "County"), Nassau County Police Depart-

ment 1st Precinct (the "Precinct"), and unidentified Nas-sau County police officers, alleging that the officers vio-lated his civil rights while placing him under arrest in December 2009. [Docket Entry No. 1]. On May 11, 2011, the Court dismissed the complaint sua sponte with prejudice as against the Precinct and without prejudice as against the County with leave to amend. [Docket Entry No. 7]. On July 27, 2011, plaintiff filed an amended complaint [*2] against the County, Lawrence Mulvey, Police Commissioner of Nassau County, Richard So to, Police Sergeant, and several named police officers (col-lectively, "defendants"). [Docket Entry No. 28]. On Au-gust 2, 2011, defendants moved to dismiss the amended complaint based upon plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m) or, in the alterna-tive, to stay the case pending resolution of a parallel ac-tion plaintiff filed in state court. [Docket Entry Nos. 29-31]. By order dated November 2, 2011, the Court denied both motions. [Docket No. 39].

Defendants now move for summary judgment pur-suant to Federal Rule of Civil Procedure 56. [Docket Entry No. 70]. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

I. Claims

Plaintiff asserts; a claim pursuant to 42 U.S.C. § 1983 alleging that officers used excessive and unreason-able force in the course of plaintiff's arrest in violation of his rights under the Fourth Amendment;[1] common law

assault and battery claims under New York law; a claim pursuant to 42 U.S.C. § 1983 alleging that the officers were deliberately indifferent to his serious medical needs in violation of his rights under the Fourteenth Amendment;[2] [*3] and a claim pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), against the County based upon its alleged endorsement of racially discriminatory policies and its alleged deliberate indifference to violations of plaintiff's constitutional rights.[3]

1   While plaintiff also alleges violations of his rights under the Fourteenth Amendment, allegations of the use of excessive force during the course of an arrest are analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989) ("[T]he Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody . . . of the arresting officer.").

2   Plaintiff's complaint also alleges violations of his rights in this regard under the Eighth Amendment, but because [*4] his claims relate to his medical treatment in the course of his pre-trial arrest and detainment, plaintiff may only assert a claim under the Fourteenth Amendment. City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983) ("The Due Process Clause . . . require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."); Herbert v. NYC Dep't of Corrections, No. 10-CV-8799, 2012 U.S. Dist. LEXIS 120167, 2012 WL 3834660, at *2 (S.D.N.Y. Aug. 21, 2012) ("A pre-trial detainee . . . receives protection against mistreatment . . . under the Due Process Clause of the Fourteenth Amendment."). However, the analysis under the Fourteenth Amendment is identical to that applied to post-trial detainees under the Eighth Amendment. Id. ("State pre-trial detainees' § 1983 claims for deliberate indifference to serious medical conditions are analyzed . . . under the same standard used to address similar Eighth Amendment claims brought under the statute.").

3   Plaintiff's complaint fails to specify a basis for naming Lawrence Mulvey, Police Commissioner of Nassau County Police Department, as a defendant in this action.

## II. Summary Judgment   [*5] Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party [*6] to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vt., 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

## III. Factual Background

### A. 56.1 Statement

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party

moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to submit a "separate, short and concise statement, in [*7] numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). In response to a motion for summary judgment, non-movants must respond to each purportedly undisputed fact and cite to supporting admissible evidence in the record. Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c). The movant's asserted facts are deemed to be admitted unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Local Rule 56.1(c). Pro se litigants are "not excused from meeting the requirements of Local Rule 56.1." Wali v. One Source Co., 678 F. Supp.2d 170, 178 (S.D.N.Y. 2009).

Plaintiff has failed to submit a proper response to defendants' Rule 56.1 Statement. Plaintiff's response, while sworn, contains no factual allegations supported by admissible evidence in the record to refute defendants' version of purportedly undisputed facts. Nonetheless, the Court retains discretion "to consider the substance of the plaintiff's arguments," even when the plaintiff fails to comply with Local Rule 56.1. Wali, 678 F. Supp.2d at 178; see also Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) [*8] ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."); Hayes v. County of Sullivan, Nos. 07-CV-7667, 09-CV-2071, 853 F. Supp. 2d 400, 2012 U.S. Dist. LEXIS 46262, 2012 WL 1129373, at *1 n.1 (S.D.N.Y. March 30, 2012) ("In light of Plaintiff's pro se status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record."). Therefore, the Court will consider the sworn statements made by plaintiff in his deposition.

B. Plaintiff's Arrest

On December 5, 2009 between 10:00 p.m. and 10:50 p.m., plaintiff walked from his home to a nearby "deli" where he remained for approximately thirty (30) minutes, during which time he played pool and drank two (2) beers. County Defendants' Statement of Material Facts Pursuant to Rule 56.1 [Docket Entry No. 70-1] ("Def. 56.1 St.") at¶¶ 15, 18; Defendants' Motion for Summary Judgment ("Mot.") Ex. F, Deposition of James McClendon dated March 22, 2012 [Docket Entry No. 70-12] ("Pl. Dep.") at 18:24-19:10. Plaintiff then exited the deli and stood near [*9] the front door to smoke a cigarette. Def. 56.1 St. at ¶ 19. Plaintiff was wearing dark pants and a blue hooded sweatshirt. Id. at¶ 16.

At approximately 11:16 p.m., an anonymous complainant called 911 to report that she saw a tall black male wearing a blue sweater display a gun to people in the deli. Id. at ¶ 23; Mot. Ex. F, Nassau County Police Dep't I/Dispatcher Event Information [Docket Entry No. 70-9]. Police Officer Laura Sventoraitis responded to the call and saw plaintiff standing in front of the deli. Def. 56.1 St. at ¶¶ 22-24.

The details of the interaction between plaintiff and Officer Sventoraitis are disputed. Defendants claim that "[i]nitially, Officer Sventoraitis peacefully and from an appropriate distance from Plaintiff began asking him questions." Id. at ¶ 27. Plaintiff did not answer the questions and instead attempted to walk away. Id. at ¶ 28. Plaintiff refused to respond to Officer Sventoraitis's commands. Id. at ¶ 29. During this exchange, Officer Sventoraitis noticed a large bulge in plaintiff's right-front pant pocket. Id. at ¶ 30. Plaintiff ignored Officer Sventoraitis's instructions to stand still and show his hands and instead tried to walk away. Id. at ¶ 32. [*10] Another police officer then "came from behind and blocked Plaintiff from leaving." Id. at ¶ 33. Plaintiff then prevented the officers from conducting a pat down, and Officer Sventoraitis arrested plaintiff with the assistance of other officers at the scene. Id. at ¶¶ 34-35. "During the arrest, Plaintiff displayed resistance to arrest, which threatened the Officer's safety and required for more officers to assist with his arrest." Id. at 36. During a search of plaintiff incident to the arrest, officers discovered a loaded handgun and several bullets. Id. at ¶¶ 37-38.

Plaintiff's account of his interaction with the arresting officers is drawn from his deposition testimony:

> I went outside to smoke a cigarette . . . and, then, the next thing you know, you see an officer walking up and she looked around. She walked off. I finished smoking and was getting ready to go back in the store, the officer walks back. She grabs me by the arm, two more officers pull up in the car to get out the car, the officer the middle officer grabs me and, then, the officer grabs me and throws me to the floor.

Pl. Dep. at 19:18-20:05. Plaintiff insists in his testimony that he and the officers did not exchange words [*11] at any time during the incident. Id. at 20: 10-20:21 ("Q: So, this entire interaction occurred and no words were said by anybody? A: No words.").

According to plaintiff, after being taken to the ground, "[he] got pulverized by the police." Id. at 20:22-20:25. Plaintiff testified that "more officers started

coming and they started pounding on [him], . . . they kept pounding on [him] and [he] got kicked in the face and [he] got kicked, again, and . . . [he] lost consciousness after that." Id. at 21:18-21:23. According to plaintiff, the beating continued after he was handcuffed, he was unconscious for five (5) to fifteen (15) minutes, and following his arrest his face was swollen and his head was hurting, but the officers ignored his requests for medical attention. Id. at 21:06-21:15, 24:19-25:19.[4]

> 4    The surveillance footage submitted to the Court depicting a portion of plaintiff's encounter with Officer Sventoraitis is not helpful in determining the issue, as plaintiff is pulled out of view of the surveillance camera immediately after Officer Sventoraitis apparently spots the bulge in plaintiff's pocket. The only thing that is clear is that the surveillance footage does not directly contradict [*12] plaintiff's allegation of excessive force. Cf. Cameron v. City of N.Y., 598 F.3d 50, 60 (2d Cir. 2010) ("When a movant presents '[i]ncontrovertible evidence . . . such as a relevant videotape whose accuracy is unchallenged,' we will grant the movant's motion for [summary] judgment . . . if that evidence 'so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.'") (quoting Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)).

After being placed in custody, plaintiff signed an acknowledgment of understanding and waiver of his Miranda rights and gave a statement. Id. at ¶¶ 40-42. Plaintiff's statement reads, in relevant part, "[w]hen I went outside a police car pulled up. The cop started asking me questions and then they told me to get on the ground. The cops then found the gun and bullets in my pocket." Mot. Ex. P, Statement of James McClendon [Docket Entry No. 70-19].[5]

> 5    According to defendants, plaintiff admitted in his statement "to having been repeatedly asked questions from the Officer and having been asked to get on the ground, and failing to do so." Def. 56.1 St. at ¶ 42. The statement contains no [*13] such admission.

At 6:27 a.m. the following morning, plaintiff signed a physical condition questionnaire indicating that he was in good health and did not need a doctor, but that the "cops stepped on [his] head," and his "right ear hurt[]." Mot. Ex. R, Nassau County Police Dep't Physical Condition Questionnaire [Docket Entry No. 70-21]. At 9:11 a.m. on the same day, plaintiff signed a second physical condition questionnaire indicating that that he was in good health and did not need a doctor, but that his right

hand and right ear were injured during the arrest. Mot. Ex. S, Nassau County Police Dep't Physical Condition Questionnaire [Docket Entry No. 70-22]. Plaintiff was taken to the hospital at approximately 12:05 p.m. on December 6, 2009. Pl. Dep. at 29:07-29:18. The "Discharge Diagnosis" states: "Head Injury, Closed, No Loss of Consciousness[;] Contusion, Face[;] Pain, Neck." Medication was not prescribed by the doctors at the hospital. Pl. Dep. at 31:21-32:03.

## C. Plaintiff's Criminal Proceedings

During his criminal proceedings, plaintiff moved to suppress the gun and ammunition and certain inculpatory statements. People v. McClendon, 92 A.D.3d 959, 939 N.Y.S.2d 530, 531 (App. Div. 2012). Plaintiff's [*14] motion was denied following a hearing at which the court viewed surveillance footage of the incident. Id. Plaintiff entered a plea of guilty to criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, and criminal possession of a weapon in the fourth degree. Plea Minutes, New York v. James McClendon, Ind. No. 1349N-10 (N.Y. Sup. Ct. Feb. 7, 2011) at 6:16-7:03. The court permitted plaintiff to plead guilty to the charge of obstructing governmental administration without explicitly admitting his guilt pursuant to People v. Serrano, 15 N.Y.2d 304, 310, 206 N.E.2d 330, 258 N.Y.S.2d 386 (1965), in order to allow plaintiff to avoid admitting the veracity of the facts underlying the charge, which were believed to be relevant to plaintiff's appeal of the suppression ruling. Id.[6]

> 6    "You're going to plead guilty to counts one, two and three. Based on an agreement that I have reached with your attorney, you will enter what's known as a Serrano plea with respect to count four . . . . Which means that, the attorney--your attorney is concerned about possibly an admission to the fourth count somehow jeopardizing the right to appeal the hearing you had conducted. The Serrano plea has you [*15] not admitting to any of those facts, as it relates to count four." Plea Minutes, at 6:16-7:03.

The Appellate Division affirmed the lower court's denial of the suppression motion, holding that, despite the hearing court's finding that "the security video established that certain noncrucial aspects of [the arresting officer's] testimony may have been inaccurate," the surveillance footage "supported the officer's testimony on the crucial point that the defendant was not subjected to a forcible stop until the officer saw what appeared to be the outline of a gun in the defendant's pocket." McClendon, 939 N.Y.S.2d at 531. Accordingly, the Appellate Division affirmed the hearing court's finding that the

search of plaintiff was lawful and upheld the denial of the suppression motion. Id.

## III. Discussion

### A. Municipal Liability

A municipality may be held liable under 42 U.S.C. § 1983 if a governmental custom, policy, or usage of the municipality causes a deprivation of the plaintiff's rights under federal law. Monell, 436 U.S. at 690-91. "[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that [*16] would justify municipal liability." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012); see also Lee v. City of N.Y., No. 00-CV-3181, 2002 U.S. Dist. LEXIS 13696, 2002 WL 1732810, at *9 (E.D.N.Y. July 22, 2002) ("A municipality cannot be liable under § 1983 on a theory of respondeat superior for the isolated unconstitutional acts of its employees."). Such acts may support municipal liability only where "they were done pursuant to municipal policy, or were sufficiently widespread and persistent to a support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Jones, 691 F.3d at 81.

Beyond his conclusory allegations, plaintiff has offered no evidence to support a finding that a governmental custom, policy or usage caused the alleged constitutional violations at issue. Accordingly, the County is granted summary judgment on all claims against it, which are dismissed with prejudice.

### B. Lawrence Mulvey

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of [*17] damages under§ 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991); see also Dunn v. Carrier, 137 Fed. Appx. 387, 389 (2d Cir. 2005) ("Where damages are sought in a section 1983 action, the defendant must be responsible for the alleged constitutional violation: The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.") (internal quotation marks omitted). Aside from showing a defendant's direct participation in the offending conduct, a plaintiff may demonstrate the personal involvement of a supervisory defendant by showing that the supervisor (1) failed to remedy the wrong after learning of the violation; (3) created or allowed the continuation of a policy or custom pursuant to which the unconstitutional practices occurred; (4) exhibited gross negligence in super-

vising subordinates who caused the constitutional violation; or (5) demonstrated gross negligence or deliberate indifference by failing to act to remedy unconstitutional practices. Wright v. Smith, 21 F.3d 496, 502 (2d Cir. 1994).

Plaintiff has offered no evidence to support a finding of liability on any of the above theories. Since [*18] no liability may attach to defendants on the basis of their purported supervisory responsibilities alone, which appears to be the only basis for the inclusion of defendant Lawrence Mulvey in this action, Lawrence Mulvey is granted summary judgment, and plaintiff's claims against him are dismissed with prejudice.

### C. Deliberate Indifference

To establish a claim under the Eighth or Fourteenth Amendment for denial of medical care, plaintiff must show that defendants were deliberately indifferent to his serious medical needs. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). A two-pronged test requires (1) that plaintiff's physical condition be sufficiently serious, and (2) that the failure to render care result from a sufficiently culpable state of mind. Id. at 66. Plaintiff's claim does not satisfy either prong of this test.

Bruises and lacerations alone are generally insufficient to support a claim of constitutional deprivation. See, e.g., Dawes v. Coughlin, 159 F.3d 1346 (2d Cir. 1998) (summary order holding that a reasonable finder of fact could not conclude that a one-and-a-half (1 1/2) inch laceration was sufficiently serious to give rise to an Eighth Amendment claim); Dallio v. Hebert, 678 F. Supp. 2d 35, 60 (N.D.N.Y. 2009) [*19] (holding that two (2) black eyes, bruising in the kidney area, kick marks, open lacerations, headache and numbness did not constitute serious medical need as a matter of law); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp.2d 303, 311 (S.D.N.Y. 2001) (holding that a bleeding finger, even where skin was "ripped off," did not constitute serious medical need). Rather, the standard for Eighth Amendment violations contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

Plaintiff alleges in his complaint that he suffered "facial and scalp contusions." Am. Compl. ¶ 119. Plaintiff testified in his deposition that the facial and scalp contusions were not bleeding at the time of his arrest. Pl. Dep. at 45:14-45:23. Later in his deposition testimony, plaintiff states that "[the officers] caused head seizures and contusions." Id. at 61:14-61:16. Although plaintiff testified that he now suffers from migraines, back pain, and blurry vision as a result of the injuries inflicted upon him during his arrest, id. at 61:15-61:17, and that his

subsequent requests to return to the hospital while incarcerated [*20] at the County Jail have been denied, id. at 32:06-32:14, any inattention to those alleged chronic conditions during plaintiff's incarceration are irrelevant to the determination of whether the officers who arrested plaintiff and initially took him into custody displayed deliberate indifference to a serious medical need. The injuries plaintiff exhibited in the immediate aftermath of his arrest, i.e., non-bleeding lacerations and contusions, are not sufficiently serious to support a claim of constitutional deprivation. Although chronic or infected wounds may support an Eighth Amendment claim, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment."), plaintiff does not allege such an injury here.

Plaintiff's claim also fails as a matter of law due to his inability to offer evidence to support a finding that defendants possessed a culpable state of mind in delaying medical treatment. A defendant demonstrates deliberate indifference when he or she "knows of and disregards [*21] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Courts have equated the requisite state of mind to "criminal recklessness." Collazo v. Pagano, 656 F.3d 131, 135 (2d Cir. 2011).

The relatively minor nature of plaintiff's injuries does not support an inference that defendants were able to conclude from plaintiff's physical appearance alone that he was in serious need of medical attention. Further, while plaintiff testified in his deposition that he requested medical attention after he was arrested, Pl. Dep. at 28:17-29:09, he signed two statements to the contrary. [Docket Entry Nos. 70-21, 70-22]. Thus, plaintiff has failed to allege any basis for defendants to have inferred that a substantial risk of serious harm existed. Given the minor nature of plaintiff's injuries and his own statements, defendants cannot be reasonably found to have possessed information regarding plaintiff's medical condition sufficient to render any delay in providing treatment evidence of a culpable state [*22] of mind.

Accordingly, defendants are granted summary judgment on plaintiff's Fourteenth Amendment claims related to his medical treatment following his arrest, which are dismissed with prejudice.

D. Excessive Force[7]

7   To the extent that plaintiff is also asserting a claim for false arrest or "unlawful seizure," such a claim is barred by the doctrine of collateral estoppel. Hayes v. County of Sullivan, 853 F. Supp.2d 400, 426 (S.D.N.Y. 2012) ("'Settled authority establishes that where, as here, a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action.'") (quoting DeFranco v. Town of Irondequoit, No. 06-CV-6442, 2009 U.S. Dist. LEXIS 82953, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (holding that plaintiffs who pled guilty after their motion to suppress evidence was denied were barred by collateral estoppel from re-litigating their Fourth Amendment claims under § 1983)).

In order to establish that the degree of force used to effectuate his arrest constituted a constitutional violation, plaintiff must show that the actions of the arresting officers were "objectively unreasonable [*23] in light of the facts and circumstances confronting [them], without regard to [their] underlying intent or motivation.'" Nimely v. City of N.Y., 414 F.3d 381, 390 (2d Cir. 2005) (quoting Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004)). The Court must pay "careful attention to the facts and circumstances . . . , including the severity of the crime at issue, whether . . . [plaintiff] pose[d] an immediate threat to the safety of the officers or others, and whether he . . . actively resist[ed] arrest or attempt[ed] to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

Defendants argue that plaintiff's excessive force claim is barred by the doctrine of collateral estoppel as a consequence of plaintiff's plea to the charge of obstructing governmental administration.[8] According to defendants, the plea conclusively determined that plaintiff "was acting combative [sic], while armed with a fully loaded .357 magnum, . . . [and] was also refusing to comply with Officer Sventoraitis's commands and that he attempted to 'evade arrest.'" Memorandum of Law in Support of County Defendants Motion for Summary Judgment [Docket Entry No. 70-23] ("Def. Memo.") at 8-9 (citing Def. [*24] 56.1 Stmt. ¶ 49). Because "the threat of danger to the officer and society" and "whether the suspect is resisting or attempting to evade arrest" are two factors to be considered in determining the reasonableness of the officers' use of force, defendants argue that the plea determined these facts and thus necessarily resolved the excessive force issue, precluding its relitigation. Def. Memo. at 8-9 (citing Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999).[9]

8    "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ." N.Y. PENAL LAW § 195.05 (McKinney 2012).

9    Given the disposition of this issue, the Court need not address whether plaintiff's entry into a Serrano plea changes the preclusive effect of the plea.

Defendants are correct that "under appropriate circumstances, an issue decided in a criminal proceeding may be given preclusive effect in a subsequent civil action and such [*25] preclusive effect is possible regardless of whether the underlying criminal proceeding was resolved by a jury trial." Searles v. Dalton, 299 A.D.2d 788, 751 N.Y.S.2d 84, 84-85 (App. Div. 2002) (internal quotation marks and citations omitted). "[A] guilty plea conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty. . . . Whether that same guilty plea forecloses a future cause of action or legal proceeding, however, is to be determined on the basis of other principles, specifically, of collateral estoppel and the full faith and credit statute." United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (internal quotation marks omitted). Under New York law, there are two (2) requirements for the application of collateral estoppel: (1) "'the identical issue was necessarily decided in the prior action and is decisive in the present action'"; and (2) "'the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination.'" Gregg, 463 F.3d at 165 n.1 (quoting D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 564 N.E.2d 634, 636, 563 N.Y.S.2d 24 (N.Y. 1990)). The party seeking preclusion bears the burden of showing that the [*26] issue to be precluded was necessarily decided in the prior action. Merchants Mut. Ins. Co. v. Arzillo, 98 A.D.2d 495, 472 N.Y.S.2d 97, 103 (App. Div. 1984).

Plaintiff's guilty plea to obstructing governmental administration does not preclude his excessive force claim. Although "some degree of physical force is incident, and even necessary, to making an arrest, especially in situations where the suspect has previously refused to comply with the officers' orders," Davis v. Callaway, No. 3:05CV00127, 2007 U.S. Dist. LEXIS 29468, 2007 WL 1079988, at *5 (D. Conn. Apr. 9, 2007), "an officer is not entitled to use an unlimited amount of force, even where the arrestee resists or assaults the officer," McMillan v. City of N.Y., No. 10 Civ. 2296, 2011 U.S. Dist. LEXIS 141880, 2011 WL 6129627, at *5

(S.D.N.Y. Dec. 9, 2011) (internal quotation marks omitted). Even where the arrestee resists, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Therefore, plaintiff's conviction of obstructing governmental administration, even if it establishes the factual predicate of the charge, i.e., [*27] that plaintiff interfered in some way with defendants' investigation, is not dispositive of whether defendants used excessive force in response to plaintiff's resistance or interference. Id. at 165 ("As our brethren in other Circuits have squarely held, the jury's return of a guilty verdict in state court for resisting arrest, and/or other offenses such as assault on a police officer does not necessarily preclude a subsequent claim of excessive force in federal court."); see also, e.g., Griffin v. Crippen, 193 F.3d 89, 92 (2d Cir. 1999) (plaintiff's guilty plea to assault did not preclude excessive force claim against guards stemming from same incident because conviction was not inconsistent with the use of excessive force in subduing the plaintiff); Getlin v. Zoll, 707 F. Supp.2d 369, 376 (E.D.N.Y. 2010) (holding that plaintiff's excessive force claim was not precluded by his prior conviction for reckless endangerment because neither the conviction nor the plea allocution addressed the details of plaintiff's behavior and the reasonableness of the officers' response); Sanabria v. Martins, 568 F. Supp.2d 220, 226 (D. Conn. 2008) (holding that plaintiff's guilty plea to offense of interfering [*28] with a police investigation did not preclude him from claiming that excessive force was used in response to plaintiff's interference); McCrory v. Belden, No. 01 Civ. 0525, 2003 U.S. Dist. LEXIS 17381, 2003 WL 22271192, at *5 (S.D.N.Y. Sept. 30, 2003) (holding that inmate's conviction for attempted assault did not preclude inmate from claiming that excessive force was used either before or after the attempted assault).

Given that plaintiff's claim is not precluded by the doctrine of collateral estoppel, the Court must assess the sufficiency of the evidence plaintiff has presented. As stated above, an application of force is excessive if it is "objectively unreasonable 'in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham, 490 U.S. at 397). While "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," Graham, 490 U.S. at 396, relatively minor injuries are often held to be sufficient to sustain an excessive force claim past summary judgment. See, e.g., Maxwell v. City of N.Y., 380 F.3d 106, 109-10 (2d Cir. 2004) [*29] (reversing summary judgment for defendants where plaintiff testified that head-first shove into police car

caused a scrape, pain in her arm and lower back, and post-concussive syndrome); Robison v. Via, 821 F.2d 913, 923-24 (2d Cir. 1987) (holding that plaintiff's testimony that officer pushed her against inside of the door of her car, yanked her out, threw her up against the fender, and twisted her arm behind her back causing "bruises lasting a 'couple weeks'" was sufficient to prevent summary judgment on excessive force claim). Therefore, the contusions and lacerations suffered by plaintiff could sustain a claim of excessive force.

Plaintiff's testimony that he was kicked and "pulverized" after being placed in handcuffs also raises a triable issue of fact. Unnecessary blows inflicted while an arrestee is in handcuffs may be sufficient to sustain an excessive force claim. See, e.g., Lemmo v. McKoy, No. 08-CV-4264, 2011 U.S. Dist. LEXIS 23075, 2011 WL 843974, at *6 (E.D.N.Y. Mar. 8, 2011) ("[G]ratuitous uses of force that are not required to subdue an individual likely fail the . . . objective reasonableness test"); Castellar v. Caporale, No. CV-04-3402, 2010 U.S. Dist. LEXIS 91191, 2010 WL 3522814, at *8 (E.D.N.Y. Sept. 2, 2010) (denying [*30] summary judgment for defendants where plaintiff testified that officer shoved him against the wall when plaintiff was already handcuffed, despite absence of any serious injuries); Hamilton v. City of N.Y., Nos. 07-CV-3633, 07-CV-3825, 2009 U.S. Dist. LEXIS 63432, 2009 WL 2226105, at *9 (E.D.N.Y. July 23, 2009) (holding that it was objectively unreasonable for an officer to trip plaintiff after he was already handcuffed and cooperating); Davis v. City of N.Y., No. 04-CV-3299, 2007 U.S. Dist. LEXIS 10555, 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (denying defendants' motion for summary judgment due to plaintiff's testimony that she was kicked in the shoulder for no reason while handcuffed on the floor, holding that such a "gratuitous" use of force does not constitute an objectively reasonable use of force as a matter of law); Pierre-Antoine v. City of N.Y., No. 04-CV-6987, 2006 U.S. Dist. LEXIS 28963, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (denying defendant's motion for summary judgment on excessive force claim and noting plaintiff's testimony that the assault continued after he was handcuffed, "when a claim of necessary force would be much harder to maintain").

Although plaintiff relies almost exclusively on his own testimony in support of his excessive force [*31] claim, defendants have failed to offer any evidence that conclusively refutes that testimony. At this stage, therefore, there is no evidence before the Court from which it can conclude that a fact-finder could not reasonably credit plaintiff's testimony and find the force used against him to be unreasonable. See Sachs v. Cantwell, No. 10 Civ. 1663, 2012 U.S. Dist. LEXIS 125335, 2012 WL 3822220, at *15 (S.D.N.Y. Sept. 4, 2012) ("Ultimately

there is a dearth of evidence in the record that would conclusively establish exactly how much force was used and whether that force was objectively reasonable."); see also Lemmo, 2011 U.S. Dist. LEXIS 23075, 2011 WL 843974, at *7 ("[T]he record contains only a general denial by the officers with respect to this episode rather than an actual conflicting account. The jury can and should decide what actually occurred and what, if any, compensation is due plaintiff."). Whether plaintiff is entitled to recover depends on a determination of a number of issues, including plaintiff's behavior toward the officers, the degree of force used to subdue him, the severity of his injuries, and the credibility of the parties. These determinations cannot be made as a matter of law based upon the record here. See Sachs, 2012 U.S. Dist. LEXIS 125335, 2012 WL 3822220, at *15 [*32] ("[A]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553-54 (2d Cir. 2005)). Accordingly, summary judgment on plaintiff's excessive force claim is denied.

E. State Law Claims

Plaintiff's state law claims must be dismissed based upon plaintiff's failure to adequately plead compliance with the notice of claim requirements under New York law. See N.Y. Gen. Mun. Law § 50-e (McKinneys 2012). "Under New York law, a notice of claim is a condition precedent to bringing certain tort actions against a municipality . . . for damages sustained by reason of the negligence or wrongful act of the municipality or its officers, agents or employees." Ferlito v. County of Suffolk, No. 06-5708, 2007 U.S. Dist. LEXIS 85523, 2007 WL 4180670, at *3 (E.D.N.Y. Nov. 19, 2007). "The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." Warner v. Village of Goshen Police Dept., 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). "[A] plaintiff asserting state tort law claims against a municipal entity or its employees must plead in [*33] the complaint that: (1) the Notice of Claim was timely served within ninety days after such claim arose; (2) at least thirty days have elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) the defendant failed to satisfy the claim in that time." Matthews v. City of N.Y., No. 10-CV-4991, 2012 U.S. Dist. LEXIS 126082, 2012 WL 3839505, at *23 (E.D.N.Y. Sept. 5, 2012). Plaintiff has failed to plead compliance with these requirements and, therefore, his claims must be dismissed. Because no evidence has been presented regarding the status of plaintiff's parallel state action and the Court cannot conclude that any application for relief from the notice of claim requirements in state court would be unsuccessful, plaintiff's state law claims are dismissed without preju-

2012 U.S. Dist. LEXIS 146713, *

dice to allow plaintiff to pursue relief in state court if appropriate.

III. Conclusion

For the foregoing reasons, defendants motion for summary judgment [Docket Entry No. 62] is granted in part and denied in part. The Clerk of Court shall, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure [*34] and mail a copy of this order to plaintiff's address of record pursuant to Rule 5(b)(2)(C).

SO ORDERED.

/s/ Sandra J. Feuerstein

Sandra J. Feuerstein

United States District Judge

Dated: October 11, 2012

Central Islip, New York